(No. 53951.—

ROY W. GREEN, Jr., Appellee, v. ADVANCE ROSS ELECTRONICS CORPORATION *et al.*, Appellants (Roy W. Green, Sr., Appellee).

*Opinion filed September 30, 1981.—Rehearing denied*
*November 25, 1981.*

Patrick W. O'Brien and Gary T. Johnson, of Chicago (Mayer, Brown & Platt, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William J. Holloway, Thomas L. Browne, and Stephen R. Swofford, of counsel), for appellee.

MR. JUSTICE SIMON delivered the opinion of the court:

This appeal involves the application of that part of the Illinois long-arm statute which relates to commission of tortious acts within this State (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(b)). To be resolved is whether a corporation

incorporated or headquartered in Illinois can, in an action claiming breaches of fiduciary duty, gain jurisdiction over a Texas resident who once served it as president and later as a consultant when all of the Texan's corporate responsibilities, including the acts which allegedly injured the corporation, were performed outside Illinois. The principal position of the parties seeking to assert Illinois jurisdiction is that an out-of-State resident submits to the jurisdiction of Illinois courts when he commits a tort which causes a diminution of the funds of a corporation organized or headquartered in Illinois.

Roy W. Green, Sr., the counterdefendant, sold his business in Texas to Advance Ross Corporation (Advance Ross), a Delaware corporation with headquarters in Illinois, in 1970. Upon the sale, he became president of Advance Ross Steel Corporation (Steel), a Texas corporation, the subsidiary of Advance Ross which took over his business. He also became president of another Advance Ross subsidiary, Advance Ross Electronics Corporation (Electronics), incorporated in Illinois. In addition, he became a director of Advance Ross. The businesses and activities in which Steel and Electronics engaged were entirely outside Illinois.

In 1975, Advance Ross replaced Green, Sr., as president of its two subsidiaries with his son, Roy W. Green, Jr., and the service of Green, Sr., as a director of the parent corporation was terminated. From that time until 1978, Green, Sr., served as a consultant for Steel. Advance Ross and Electronics both claim that as a consultant Green, Sr., continued to control significant operations of both of the companies he formerly headed. They contend he exercised influence both directly and through his son. In a deposition, Green, Jr., testified that his father, during his employment as a consultant by Steel, would decide what bidders would be selected to receive contracts from Steel and Electronics and that his father had complete control of all construction being done by these companies.

In 1978, the Advance Ross president directed Green, Jr., to discontinue his father's employment as a consultant. Green, Jr., complied with that order, but upon discharging his father he paid him $26,500, the equivalent of six months' salary, out of Steel corporate funds as "severance" pay. When the president of Advance Ross learned of the payment, he ordered Green, Jr., to return it to the corporation; and when Green, Jr., refused, he too was discharged.

Green, Jr., then brought an action in the circuit court of Cook County against Electronics alleging his employment contract had been breached. He included as a defendant in his Cook County action the parent corporation, Advance Ross, because that corporation had guaranteed all amounts payable by Electronics under the employment contract. Green, Sr., was not a participant in that suit. Electronics and Advance Ross (hereinafter referred to as defendants) then counterclaimed against Green, Jr., and also moved to join Green, Sr., as an additional counterdefendant, claiming that Green, Sr., directly, and as a co-conspirator with his son during the son's employment by Steel and Electronics, had misappropriated corporate assets and improperly converted them to his own use. The alleged misappropriations and conversion consisted of: improperly charging defendants for personal expenses of Green, Sr.; using defendants' employees to perform personal work for Green, Sr., on defendants' time; using defendants' premises and facilities for personal work for Green, Sr., without payment to defendants for such use; receipt of an improper gift by Green, Sr., in the form of the $26,500 severance pay by check drawn on the Steel account in a Longview, Texas, bank; receipt of improper salary payments by Green, Sr., in a month when he received disability pay from defendants' disability insurer; entering on behalf of defendants into an improper retainer agreement with a Texas law firm in which a son of Green, Sr., was a partner and which

represented Green, Sr., at the time the firm represented defendants.

Green, Sr., filed a special and limited appearance to contest jurisdiction in Illinois over his person. The circuit court denied the defendants' motion to join Green, Sr., as an additional party; the appellate court affirmed (87 Ill. App. 3d 279). This court granted leave to appeal under Rule 315 (73 Ill. 2d R. 315).

There is no dispute that the acts and conduct for which defendants seek to hold Green, Sr., responsible all occurred in Texas. He has not been present in Illinois or had any contact with Illinois residents since at least 1975. There is no suggestion by defendants that any visits Green, Sr., might have made to Illinois before 1975 were related in any way to the conduct complained of in their counterclaim.

The substantive matter with which this appeal is concerned is a Texas dispute. It arises out of an employment relationship performed in Texas, and out of alleged misappropriations, diversions of corporate assets and breaches of fiduciary obligations to the defendants, all of which took place outside Illinois. There is no suggestion that Green, Sr., improperly drew funds out of any Illinois account on which he was a signatory or that he embezzled or converted any funds or other property located in Illinois. All cash payments made to Green, Sr., or for his account were by checks drawn upon the Texas bank account. This account was funded from time to time by checks drawn on defendants' accounts in Illinois.

Although the counterclaim alleges long-arm jurisdiction based on both section 17(1)(a) of the Civil Practice Act, which relates to jurisdiction arising from the transaction of any business within Illinois, and section 17(1)(b), the defendants argue in this court only for jurisdiction based on the latter section. As the defendants assert long-arm jurisdiction solely on the ground that Green, Sr., committed a tortious

act within this State, there is no occasion to consider any other possible basis for jurisdiction. Section 17(1)(b) provides:

> "(1)Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person *** to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>       ***
> (b) The commission of a tortious act within this State." Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(b).

In *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, this court said that the Illinois long-arm statute reflects a conscious purpose to assert jurisdiction over nonresidents to the extent permitted by the due process clause. We do not, however, regard this observation as the equivalent of declaring that the construction and application of section 17(1)(b) depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction. Neither do we read *Nelson* to say that in applying section 17(1)(b) we should not construe the meaning and intent of our own statute irrespective of the due process limitations generally applicable to State long-arm statutes. A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible. Thus, instead of turning to the array of tests which have been articulated to assist in determining whether long-arm statutes as applied exceed permissible constitutional boundaries, we prefer to resolve this appeal by looking to the meaning of our own statute. We determine first whether it should be construed in a way which embraces defendants' claim against Green, Sr. If the answer is in the negative, as we conclude it is, applying the tests the Supreme Court has fashioned in the following decisions to determine whether

the assertion of jurisdiction by a State over a nonresident is prohibited by due process safeguards is unnecessary: See *Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571; *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559; *Kulko v. Superior Court* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569; *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228; *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

As in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 435, for the purpose of disposing of the propriety of long-arm jurisdiction there is no dispute that tortious acts were committed. To be resolved is whether their commission was "within this State" as those words are used in section 17(1)(b).

The view was adopted in *Nelson* that the requirements of section 17(b) are met "when the defendant, personally or through an agent, is the author of acts or omissions within the State, and when the complaint states a cause of action in tort arising from such conduct." (11 Ill. 2d 378, 393.) The defendant's agent in *Nelson* was physically present in Illinois when the plaintiff was injured. But, physical presence is not necessary for the commission of a tortious act within this State; in *Gray,* for example, the defendant was never physically present in Illinois. Long-arm jurisidiction was upheld, however, in *Gray* when a water heater manufactured outside Illinois exploded in Illinois and injured plaintiff because of a defective valve provided to the manufacturer by defendant outside Illinois and incorporated into the heater. The court, relying on the Restatement of Conflict of Laws § 377 (1934), reasoned that the place of a wrong is where the last event takes place which is necessary to render the actor liable. (22 Ill. 2d 432, 435.) The

last event in *Gray* was in Illinois, where the injury to the plaintiff occurred, for to be tortious the act alleged in *Gray* had to cause injury. (See also *Honeywell, Inc. v. Metz Apparatewerke* (7th Cir. 1975), 509 F.2d 1137, 1142.) While *Nelson* urged that in applying the long-arm statute the substantial elements of convenience and justice for the situs be given paramount consideration, we must give heed to the injunction of the statute that where, as in *Gray,* all of the conduct complained of took place outside Illinois, at least the injury must have been suffered in Illinois.

Defendants' theory is that although the misconduct of Green, Sr., took place outside Illinois, the consequences of his misconduct were felt in Illinois. They assert an Illinois connection because their Texas operations, including Steel's bank account in Longview, Texas, were funded from corporate assets lodged in Illinois; they thus contend that the misconduct alleged resulted in a drain upon those assets in Illinois. But the consequences upon which defendants rely are too remote from the misconduct of Green, Sr., to support the conclusion that the tortious acts complained of were committed in Illinois. The situs of the last event whose happening was necessary to hold Green, Sr., liable was in Texas. It was there that the alleged improper severance payment was made and the misappropriation and conversion of the labor of corporate employees and use of corporate premises occurred. It was also the place where the alleged improper expenses were charged and the legal retainer agreement entered into. The tortious acts, if any, and the losses or injury were complete when they occurred in Texas. That, therefore, was the place of the wrongs; their commission cannot reasonably or justifiably be transferred to Illinois by the rationale that their consequence reduced the amount of corporate assets in this State.

The defendants' view is that a financial tort must be looked upon from a different perspective than a physical injury; in the case of the former type of loss, defendants

argue jurisdiction is placed at the injured party's business headquarters for it is there that the reduction of assets resulting from the fraudulent conduct is eventually felt. The first weakness in this approach is that courts construing section 17(1)(b) have not found reason to differentiate between physical and economic injury. (See *Bodine's, Inc. v. Sunny-O, Inc.* (N.D. Ill. 1980), 494 F. Supp. 1279, 1282.) The second and more pronounced weakness is that this theory opens the gates of long-arm jurisdiction to every Illinois resident who incurs loss as the result of the fraud of a nonresident, no matter how distant the misconduct and circumstances of the loss are from Illinois. A less tenuous and contrived connection between the tortious act and this State is required to satisfy the statutory provision that its commission be within Illinois. See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 299, 62 L. Ed. 2d 490, 502, 100 S. Ct. 559, 568, where the court concluded that the possibility that Volkswagen cars sold outside Oklahoma might be used in Oklahoma was "far too attenuated a contact" to justify that State asserting jurisdiction.

If defendants' approach is sound, it is difficult to understand how its application can be restricted to financial torts. It would seem equally logical to permit anyone who sustains physical injuries anywhere to institute his action in Illinois if he resides and maintains a bank account here which is diminished by payment of medical bills. To permit no-holds-barred long-arm jursidiction of that type, even if contemplated by a State statute, would not pass muster under the due process requirements applicable to long-arm jurisdiction.

Finally, acceptance of the theory of long-arm jurisdiction advanced by defendants would be tantamount to permitting a corporation operating nationwide to sue employees, suppliers, customers and perhaps others, at the company's State of incorporation or at its headquarters no matter how far away they lived and worked or their contact

with the corporation was. Any interpretation of the Illinois long-arm statute which would permit that result is neither fair nor wise as a matter of policy. The meaning defendants ask us to give the words "within this State" takes us too easily out of this State to be acceptable. Dealing by a Texas resident with an Illinois corporation only in Texas is too remote from Illinois to regard any part of the action as occurring in Illinois.

Green, Jr., is obviously subject to Illinois jurisdiction—he chose it. But, no matter how much more convenient and economical it may be to adjudicate defendants' counterclaim against him and their similar claim against his father in the same action in Illinois, Green, Sr., cannot be brought under the authority of Illinois courts unless that result is warranted under section 17(1)(b). The connection of Green, Jr., with Illinois is not attributable to his father (see *Rush v. Savchuk* (1980), 444 U.S. 320, 332, 62 L. Ed. 2d 516, 527, 100 S. Ct. 571, 579), and the connection of one counterdefendant with Illinois cannot be attributed to another simply because they have a common interest.

Finally, the plaintiffs contend they have properly caught Green, Sr., in Illinois because of his son's presence here and their charge that father and son conspired to commit the misappropriations and conversions alleged. This is not a sufficient basis for bringing Green, Sr., to this State under the long-arm statute. It fails because it blurs over the reason Green, Jr., is subject to Illinois jurisdiction. He was not brought here under a long-arm statute; he chose to come here to sue the defendants. The fact that Green, Jr., is subject to Illinois jurisdiction does not indicate that any of the tortious acts he is charged with performing in concert with his father satisfy the requirement of the long-arm statute.

It is not true that if one conspirator is subject to Illinois jurisdiction so are all the others. Rather, the theory of jurisdiction based on the acts of a co-conspirator must be

that co-conspirators are each others' agents; thus the argument would be that when a conspirator commits a tortious act within Illinois he does so as agent for his co-conspirators, who thereby also become subject to this State's jurisdiction. But Green, Jr., committed no tortious acts within the State, any more than his father did. And, he did not file his action in Illinois as agent for his father; his lawsuit was not part of any conspiracy.

The idea of jurisdiction based on the acts of co-conspirators has been questioned. (*Chromium Industries, Inc. v. Mirror Polishing & Plating Co.* (N.D. Ill. 1978), 448 F. Supp. 544, 552.) But even if long-arm jurisdiction over conspirators may be established in some cases, it has no application to this case.

We find no support in the record in this case for requiring Green, Sr., to respond to defendants in Illinois. The judgment of the appellate court is affirmed.

*Judgment affirmed.*