Michael D. VENA, Robert L. Pappas, and James A. Mastro; personally and as sole partners in an Illinois partnership known by the same names, Plaintiffs,

v.

WESTERN GENERAL AGENCY, INC., and Donald O. Daley, Defendants.

No. 81 C 5720.

United States District Court, N. D. Illinois, E. D.

June 29, 1982.

Dennis J. Vena, Chicago, Ill., for plaintiffs.

Robert P. Cummins, Barry J. Parker, Burditt & Calkins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter is before the court on defendants' motion to dismiss for lack of personal jurisdiction and for improper venue. For the reasons stated below, the motion is denied.[1]

The case involves an alleged breach of the lease of a Cessna aircraft. In the two count complaint, plaintiffs allege that they purchased a Cessna aircraft for the purpose of leasing the aircraft to defendant Western General Agency, Inc. ("WGA"). Plaintiffs further assert that simultaneously

---

1. Defendants' argument with respect to improper venue is dependent entirely on a finding of no personal jurisdiction in this court. Since the court finds that plaintiffs have met their burden of establishing jurisdiction at this stage of the litigation, defendants' venue motion must also be denied.

with their purchase of the aircraft defendant Donald O. Daley, in his capacity as president of WGA, executed a forty-eight month lease of the plane. It is also alleged that WGA made the required monthly payments for only three months and that WGA has been in default since April 1981. In the second count, plaintiffs allege that defendant Daley personally guaranteed full payment by WGA and that he has refused to make the payments demanded of him.

Defendants moved to dismiss the complaint, claiming that it fails to allege sufficient facts to confer upon this court personal jurisdiction over defendants. In a responsive memorandum, plaintiffs filed several affidavits that provide more facts underlying the transaction and defendants filed an affidavit with their reply memorandum. Resolution of this motion turns primarily on the sufficiency of the allegations in plaintiffs' affidavits.

Each of the individual plaintiffs' affidavits state the following. Each is a resident of Illinois and became involved in this transaction initially by responding to an advertisement in the *Wall Street Journal.* Each plaintiff read the advertisement in Illinois. It solicited investors interested in purchasing an aircraft for tax shelter purposes. The individual plaintiffs responded to the advertisement and were told to contact a Keith Ward. Ward told the plaintiffs that he had a leasing company interested in finding investors for the purchase of aircraft to be used in its leasing business. Plaintiffs submitted financial statements to Ward, who determined them to be qualified to purchase a Cessna P210 aircraft that WGA wanted to lease. Plaintiffs indicated they were interested and Ward arranged a telephone conference call with WGA and Daley, who was in WGA's office in Arizona. During several phone calls between Illinois and Arizona, plaintiffs and Daley negotiated the terms of a lease of the aircraft. Plaintiffs prepared a draft of the lease and sent it to defendants in Arizona. Defendants did not accept all the terms of the lease and sent a counterproposal to plaintiffs in Illinois. This proposal was delivered by a courier service, which was paid for by defendants. Plaintiffs then accepted the defendants' proposal in their office in Illinois.

Plaintiffs have also filed an affidavit of Keith Ward, who testifies to the following. Ward originally met Daley when Ward was employed by General Electric Credit Corporation ("General"). General financed the purchases of some of the aircraft operated in an aircraft leasing business conducted by Daley and WGA. Ward was again contacted by Daley after Ward left General and he requested Ward to locate investors who would purchase an aircraft selected by WGA to be leased by it. To find investors, Ward retained the services of another individual who had previously prepared and placed several advertisements soliciting investors to purchase aircraft for lease to WGA. Such advertisements were placed in the *Wall Street Journal* with the intent of having them circulated in Illinois. In November 1980, the individual plaintiffs responded to one of the advertisements and eventually entered into the subject lease.

In support of defendants' motion to dismiss, Daley presents the following facts by way of affidavit. Daley is the president of WGA, which is in the business of selling life insurance and has never been in the business of leasing aircraft. Daley has owned or leased several airplanes for his own business and personal use. Several of Daley's purchases of aircraft have been financed through General, and Daley had contacted Keith Ward at General to arrange this financing. In the fall of 1980, Ward telephoned Daley and told him that he was no longer employed at General and that he had established an aircraft leasing business with another individual. Ward told Daley that if Daley could locate an aircraft at a wholesale price, Ward would arrange financing with an investor and then set up a lease arrangement with WGA. Shortly thereafter, Daley located two airplanes and Ward indicated he was already aware of a group of investors willing to finance the least expensive of the two, a Cessna P210. WGA did not instruct Ward, his associate or their leasing business to place advertisements in

the *Wall Street Journal.* Further, WGA has never employed Ward or his associate and WGA did not give Ward authority to act as an agent of WGA. With respect to the individual plaintiffs, Daley states that all personal contact or telephone conversations that Daley had with plaintiffs were initiated by plaintiffs or occurred through Ward and his associate. Daley also states that he executed the lease sent to WGA by plaintiffs.

In support of their contention that this court may exercise personal jurisdiction over defendants under the Illinois long arm statute, Ill.Rev.Stat. ch. 110, § 17 ("section 17"), plaintiffs characterize Ward as an agent of defendants and, thus, attribute all of his conduct to defendants. With that premise, plaintiffs argue that defendants have transacted business in Illinois within the meaning of section 17(1)(a) because defendants solicited business in Illinois through the advertisements and because Ward initiated the specific transaction for the Cessna P210 involved here. In addition, plaintiffs contend that the defendants' submission of a counterproposal lease to plaintiffs in Illinois and the lease provision stating that Illinois law will govern the lease are additional contacts with this state which are sufficient to subject defendants to the personal jurisdiction of this court.

Defendants, on the other hand, submit that Ward was not an agent of theirs and contend that plaintiffs have failed to establish that defendants have initiated sufficient contacts with Illinois to subject them to the jurisdiction of this court. Defendants have not denied that if Ward was their agent, his conduct of soliciting business in Illinois and of negotiating this transaction would constitute sufficient contacts to render defendants subject to the jurisdiction of this court. In addition, defendants recognize that any conflicts or factual disputes raised by the affidavits must be resolved in plaintiffs' favor for purposes of this motion. Thus, the main focus of defendants' arguments is that plaintiffs' affidavits are insufficient and should be disregarded. Specifically, defendants contend that many of the facts contained in the affidavits are not based on the affiants' personal knowledge and that the facts do not sufficiently demonstrate that the affiants can competently testify to all the matters contained in their affidavits. With respect to Ward, defendants maintain that he has not adequately described the circumstances under which Ward's conversation with Daley took place and that Ward does not provide any allegations establishing the precise nature of the relationship between Ward and defendants. Further, defendants submit that all the affidavits state that WGA is in the leasing business, that WGA placed the advertisement in the *Wall Street Journal,* and that Ward was defendants' agent, without providing facts based on personal knowledge to support these conclusions. Thus, defendants argue that if the court disregards incompetent affidavit testimony, plaintiffs have not shown sufficient facts to invoke long arm jurisdiction because plaintiffs have not alleged any facts that show contact by the two defendants with the State of Illinois.

As the parties' arguments reveal, resolution of this motion involves two determinations: whether the plaintiffs' affidavits are adequate and if they are, whether the facts alleged in them establish a prima facie case of jurisdiction under section 17. With respect to the first issue, it is clear that this court may receive and weigh affidavits in considering a challenge to its jurisdiction. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971). Further, although the burden of proof rests on the party asserting jurisdiction, for the purpose of making such a determination, conflicts in the affidavits submitted by the parties must be resolved in favor of the plaintiff. *Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *United States Ry. Equipment Co. v. Port Huron & Detroit Ry.,* 495 F.2d 1127, 1128 (7th Cir. 1974); *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971).

■ Before reaching the issue of whether the affidavits are in conflict, the court must determine whether plaintiffs' affidavits should be considered at all. Defendants' criticisms of lack of personal knowledge and insufficient detail are not persuasive on this issue. Those arguments are relevant to the weight to be given the affidavit testimony (both on this motion and for plaintiffs' ultimate burden of proof), but the affidavits are not so totally lacking that they are inadmissable evidence. Thus, plaintiffs' affidavits will be considered along with defendants' on this motion.

■ With respect to conflicts in the affidavits, the parties dispute certain facts concerning the relationship between Ward and WGA and Daley, but the affidavits are not actually in conflict. Plaintiffs refer to Ward as defendants' agent, while defendants deny such a relationship existed. Daley sets forth his denial of agency in his affidavit, but the plaintiffs' assertion of agency is found only in its memorandum and is based, apparently, upon Ward's affidavit. Ward states that he was requested by Daley to locate investors on behalf of WGA and that his actions in attempting to find investors were made on behalf of WGA. Thus, the affidavit does not specifically state that Ward was an agent or employee of defendants. However, to the extent this factual issue of agency or not is created by the affidavits, the court concludes the conflict must be resolved in plaintiffs' favor for purposes of this motion.[2]

■ Turning to the issue of whether the court has jurisdiction over defendants based upon plaintiffs' pleadings, a federal court has jurisdiction over a diversity case only if a court in the state in which the federal court is sitting would have jurisdiction. *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 598 (7th Cir. 1979). Federal Rule of Civil Procedure 4(e) requires that if no United States statute provides for the manner of service, service is governed by the law of the state in which the district court sits. Fed.R.Civ.P. 4(e). *See Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979). The applicable statute in this case is the Illinois long arm statute which provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State. . . .

.    .    .    .    .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.

Ill.Rev.Stat. ch. 110, § 17.

■ Until recently, the Illinois Supreme Court had determined that section 17 reflects "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." *Nelson v. Miller*, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957); *Braband v. Beech Aircraft Corp.*, 72 Ill.2d 548, 557, 21 Ill.Dec. 888, 892, 382 N.E.2d 252, 256 (1978). Thus, the tests for determining long arm jurisdiction had been merged with those developed for interpreting the requirements of the due process clause. These requirements included the necessity of sufficient "minimum contacts" between the forum state and the nonresident defendant such that the existence of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66

---

2. At this stage of the litigation, plaintiffs need only show a prima facie case for personal jurisdiction. *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189 (7th Cir.), *cert. denied*, 449 U.S. 920,

101 S.Ct. 319, 66 L.Ed.2d 148 (1980). The burden will remain with plaintiffs to prove the facts that establish jurisdiction in this court.

S.Ct. 154, 158, 90 L.Ed. 95 (1974). Additionally, the defendant, in carrying out its activities, must have reasonably anticipated being called into court to defend the cause of action. *See WorldWide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Now, however, the Illinois Supreme Court has determined that the jurisdiction permitted by the Illinois long arm statute is not to be interpreted as coextensive with the due process clause. In *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 427 N.E.2d 1203, 1206 (1981) ("*Green*"), the Illinois Supreme Court stated,

> We do not, however, regard this observation [in *Nelson v. Miller* quoted above] as the equivalent of declaring that the construction and application of section 17(1)(b) depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction. Neither do we read *Nelson* to say that in applying section 17(1)(b) we should not construe the meaning and intent of our own statute irrespective of the due process limitations generally applicable to State long-arm statutes. A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible. Thus, instead of turning to the array of tests which have been articulated to assist in determining whether long-arm statutes as applied exceed permissible constitutional boundaries, we prefer to resolve this appeal by looking to the meaning of our own statute. We determine first whether it should be construed in a way which embraces defendants' claim against Green, Sr. If the answer is in the negative, as we conclude it is, applying the tests the Supreme Court has fashioned in the following decisions to determine whether the assertion of jurisdiction by the State over a nonresident is prohibited by due process safeguards is unnecessary [citing *International Shoe* and its progeny].

While the *Green* decision involved subsection (1)(b) of section 17, it was soon relied on by the same court in a case involving section 17(1)(a). *Cook Assoc., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill. Dec. 730, 429 N.E.2d 847 (1981) ("*Cook Assoc.*"). Thus, the inquiry after *Green* and *Cook Assoc.* is a two step analysis: first a court must interpret whether the defendant's conduct falls within the meaning of the long arm statute; if it does, then the court must determine whether asserting jurisdiction over the defendant would be consistent with the due process clause. The first inquiry is difficult for this court to determine because the Illinois Supreme Court decisions were issued so recently and no reported lower court decisions interpreting the scope of the Illinois long arm statute have been rendered. Thus, at this time the court will apply the two parts of the test in the reverse order of that suggested by the Illinois Supreme Court. Under that procedure, if the facts do not support a finding of jurisdiction under due process case law, then the question of compliance with the Illinois long arm statute would not need to be addressed.

■■■ Determining whether defendants' contacts with this forum are sufficient to confer jurisdiction in this court consistent with the due process clause is not a difficult task when Ward is considered an agent of defendants. As indicated above, defendants have not attempted to argue that the contacts would be insufficient. Indeed, there can be no doubt the contacts are sufficient because Ward directly solicited business in Illinois and the courts have upheld jurisdiction in cases where the defendants have had less contact with the forum state. *E.g., O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971); *Cook Associates, Inc. v. Colonial Broach & Mach. Corp.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973). This court is equally convinced that defendants conduct constitutes the transaction of business within the meaning of section 17(1)(a), since defendants solicited investors in Illinois, made payments on

the lease in Illinois and agreed that Illinois law would govern the interpretation of the lease.[3] Therefore, the court concludes that defendants are subject to the personal jurisdiction of this court.

Accordingly, defendants' motion to dismiss is denied.

---

**3.** Plaintiffs also contend that defendants sent to them in Illinois a counter offer lease which was accepted by plaintiffs in Illinois. Thus, plaintiffs submit that the lease was executed in Illinois and they add this fact to the other Illinois contacts. Defendants never deny that a counter offer was sent, but Daley states that he executed in Arizona the lease sent to him by plaintiffs. To the extent the affidavits create a factual dispute on this matter, such dispute must be resolved in plaintiffs' favor and the acceptance of the lease in Illinois is another contact with this forum which supports the court's conclusion.