**GLOBETEC INTERNATIONAL,
LTD., Plaintiff,**

v.

**AUGUST WENZLER MAS-
CHINENBAU, GMBH,
et al., Defendants.**

No. 03 C 9257.

United States District Court,
N.D. Illinois,
Eastern Division.

April 8, 2005.

Robert Wayne Hallock, Barrington Law
Group, LLC, Barrington, IL, Joshua S.
Barney, J.S. Barney and Associates, Ltd.,
Barrington, IL, for Plaintiff.

Kevin Tottis, Chicago, IL, Mark Vincent
Heusel, Butzel Long, Ann Arbor, MI, Ken-
neth Frederick Berg, Ulmer & Berne
LLP, Chicago, IL, Peter Robert Sonderby,
Ulmer & Berne LLP, Chicago, IL, for
Defendants.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Illinois corporation Globetec Interna-
tional, Ltd. ("Globetec") has brought this
diversity of citizenship action against Au-
gust Wenzler Maschinenbau GmbH
("Wenzler"), Wenzler USA and Geoff Full-
er ("Fuller"), advancing a multicount
Complaint that stems from (1) Fuller's de-
parture from his prior employment with
Globetec and (2) Wenzler's and Fuller's
asserted diversion of business relation-
ships and opportunities from Globetec.
Wenzler has answered the Complaint, so
that the case is at issue as between it and
Globetec. This Court has earlier granted
Wenzler USA's Fed.R.Civ.P. ("Rule")
12(b)(6) motion for dismissal. Now at
hand is Fuller's fully briefed motion for
his dismissal under Rule 12(b)(1).[1]

Both sides agree that where any defen-
dant challenges in personam jurisdiction,
the plaintiff bears the burden of establish-
ing the existence of jurisdiction. In this
instance one key to such jurisdiction hing-
es both on the circumstances under which
Globetec and Fuller parted company and
on whether Fuller took any action to un-
dercut Globetec's relationship with Wen-
zler before that termination:

1. Fuller has furnished an affidavit
stating that during his July 7, 2003 tele-
phone conversation with Globetec's
President Mark Sokniewicz ("Sokniew-
icz"), the latter told Fuller that he could

1. Although Fuller also contends that he
should go hence under Rule 12(b)(6), this
Court has regarded the Rule 12(b)(1) motion
as the first order of business and therefore did
not ask the parties to brief the Rule 12(b)(6)
question fully.

no longer afford to pay Fuller's salary as a sales representative, so that his employment was therefore terminated immediately. It was after that termination that Fuller entered into an August 1, 2003 consulting agreement with Wenzler USA.

2. Sokniewicz has responded with a counteraffidavit stating that the July 2003 telephone conversation involved Fuller's indication of *his* belief that Globetec could no longer afford to pay him—as Sokniewicz has it, "I did not terminate him." Sokniewicz also states on information and belief that "Fuller acted as the sales consultant for Wenzler" in the prospective deal that was assertedly diverted from Globetec as a commission agent.

Fuller's counsel adduces (and Globetec's counsel does not dispute) *Purdue Research Found. v. Sanofi–Synthelabo S.A.*, 338 F.3d 773, 782 (7th Cir.2003) for the proposition that a plaintiff's burden of making a merely prima facie showing of personal jurisdiction is elevated to a preponderance-of-the-evidence standard if the court holds an evidentiary hearing. Because Fuller's version of events would render quite irrelevant Globetec's inch-thick set of Exhibits 1 through 6 and 7A through 7K, all of which relate to Fuller's activities (entirely within the state of Michigan) that preceded the termination of the Fuller–Globetec relationship, this Court has conducted such a hearing to get to the truth as between Fuller and Sokniewicz, and it finds Fuller's story more credible. This opinion accordingly proceeds on that premise.

Globetec's claims against Fuller are three in number. First it contends that Fuller's post-termination activities (none of which concededly took place in Illinois) breached their contract's restrictive covenant, which broadly prohibited certain post-termination conduct.[2] Globetec's other two claims are that Fuller tortiously interfered (1) with its contractual relations (by having allegedly caused Wenzler to breach its distribution contract with Globetec) and (2) with its advantageous business relationships (by having allegedly deprived it of potential commissions from Michigan company Hayes–Lemmerz, a customer to which Wenzler sold directly). In those respects the asserted jurisdictional hook to bring Fuller into this Illinois-based forum is the economic harm suffered by Globetec here.

On that score the seminal due-process-based decision, given the 1989 amendment to the Illinois long-arm statute (735 ILCS 5/2–209(c)) that made its reach coextensive with that of the Due Process Clause, is *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In rejecting an expansive view of foreseeability as the relevant standard, *World–Wide Volkswagen, id.* at 297, 100 S.Ct. 559 said:

> Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

And the Supreme Court went on (*id.* at 299) to disclaim the financial effects on the defendant within the forum state as sufficient to do the job:

> However, financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.

It is hardly surprising, then, that in the following year the Illinois Supreme Court (in *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 438–40, 56 Ill.Dec. 657, 427 N.E.2d 1203, 1207 (1981)) announced

---

**2.** Fuller asserts in his Rule 12(b)(6) motion that the restrictive covenant is unenforceable, but this opinion need not (and hence does not) explore that issue.

its "explicit rejection of the contention that the tortious act provision of the long-arm statute applies to non-resident defendants whose only contact with Illinois is allegedly causing economic harm within the state" (*McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 224 (7th Cir.1994), citing this Court's discussion of *Green* and other Illinois caselaw in *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 346–47 (N.D.Ill.1984)). To be sure, *Green* antedated the 1989 extension of Illinois' long-arm legislation to reach the outer boundary of the Due Process Clause, but *Green* also addressed the issue in *World–Wide Volkswagen* terms (and hence in federal constitutional terms) and said (86 Ill.2d at 438–39, 56 Ill.Dec. 657, 427 N.E.2d at 1207 (most citations omitted)): [3]

> Defendants' theory is that although the misconduct of Green, Sr., took place outside Illinois, the consequences of his misconduct were felt in Illinois. . They assert an Illinois connection because their Texas operations, including Steel's bank account in Longview, Texas, were funded from corporate assets lodged in Illinois; they thus contend that the misconduct alleged resulted in a drain upon those assets in Illinois. But the consequences upon which defendants rely are too remote from the misconduct of Green, Sr., to support the conclusion that the tortious acts complained of were committed in Illinois. The situs of the last event whose happening was necessary to hold Green, Sr., liable was in Texas. It was there that the alleged improper severance payment was made and the misappropriation and conversion of the labor of corporate employees and use of corporate premises occurred. It was also the place where the alleged improper expenses were charged and the legal retainer agreement entered into. The tortious acts, if any, and the losses or injury were complete when they occurred in Texas. That, therefore, was the place of the wrongs; their commission cannot reasonably or justifiably be transferred to Illinois by the rationale that their consequence reduced the amount of corporate assets in this State.

> The defendants' view is that a financial tort must be looked upon from a different perspective than a physical injury; in the case of the former type of loss, defendants argue jurisdiction is placed at the injured party's business headquarters for it is there that the reduction of assets resulting from the fraudulent conduct is eventually felt. The first weakness in this approach is that courts construing section 17(1)(b)[the tortious-act branch of the long arm statute [4]] have not found reason to differentiate between physical and economic injury. The second and more pronounced weakness is that this theory opens the gates of long-arm jurisdiction to every Illinois resident who incurs loss as the result of the fraud of a nonresident, no matter how distant the misconduct and circumstances of the loss are from Illinois. A less tenuous and contrived connection between the tortious act and this State is required to satisfy the statutory provision that its commission be within Illinois. See *World–Wide Volkswagen*

---

**3.** What follows is a far more extensive quotation of prior authority than this Court is wont to employ. But in this case it serves to illustrate the conceptual parallel between the defendant's conduct that was found constitutionally insufficient in *Green* and Fuller's conduct here. Both cases deal with defendants' conduct *outside* of Illinois that assert-

edly impacts plaintiffs financially in this State.

**4.** This portion of the *Green* analysis does not of course apply here. But what follows next (relying as it does on the United States Supreme Court's due process holding) clearly does.

*Corp. v. Woodson* (1980), 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490, 502, where the court concluded that the possibility that Volkswagen cars sold outside Oklahoma might be used in Oklahoma was "far too attenuated a contact" to justify that State asserting jurisdiction.

For its part, Globetec points to *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir.1997) as claimed support for haling Fuller into court here. But *Janmark* premised personal jurisdiction over the out-of-state target of an interference-with-prospective-economic-advantage claim on the target's commission of a tort *in Illinois* (*id.* at 1202).

In part Fuller's counsel urges that *Janmark* cannot alter Illinois law. That is true but irrelevant: Because Illinois' long arm is now coterminous with the reach of the Due Process Clause, definitive federal jurisprudence is also applicable in construing the Illinois statute. But it also remains true that *Janmark* does not provide substantive support for Globetec's claims against Fuller in due process terms either. In light of this Court's findings stemming from the evidentiary hearing, all of Fuller's conduct at issue here was *after* the termination of the Globetec–Fuller contract and *after* Wenzler's termination of its arrangement with Globetec, and it was totally external to Illinois. Its only potential Illinois "contact" was its effect on Globetec's bank account here. And that is fatal to Globetec's attempted reliance on the Illinois long-arm statute.

Just a few words should be added as to what Globetec contends is an added string to its bow: the contention that Fuller was engaged in the performance of duties as a director or officer of Globetec (see 735 ILCS 5/2–209(a)(12)). For one thing, Fuller points out that he was not really an officer of Globetec while he was in its employ[5]—he says his label of "Vice President of Sales and Marketing" was not an elected officership, but merely a euphemism of the type often employed by corporations in an effort to give some of their people greater credibility when dealing with customers or the like. That contention seems persuasive, but this Court need not rely on it—instead Globetec misses the point that on the facts ascertained by this Court Globetec's claims do not stem from actions by Fuller in his alleged corporate capacity as an officer. Again the claims against Fuller arise out of his post-employment activities.

## *Conclusion*

Globetec has not been successful in bringing Fuller within this District Court's purview in terms of in personam jurisdiction. Fuller's motion to be dismissed out of this action is granted, but without prejudice to Globetec's ability to sue him in some other jurisdiction.

---

5. There is no question that Fuller was not a Globetec director.