**ST. CROIX, LTD., ST. THOMAS I, LTD., ST. THOMAS II, LTD., and LLEWELLYN PHILLIPS, Appellants/Plaintiffs**

**v.**

**SHELL OIL COMPANY, d/b/a SHELL CHEMICAL CO., HOECHST CELANESE CORPORATION, and E.I. DUPONT de NEMOURS AND COMPANY, Appellees/Defendants**

S. Ct. Civil No. 2011-0057

Supreme Court of the Virgin Islands

January 22, 2014

469

TERRENCE BUEHLER, ESQ., Touhy, Touhy & Buehler, Chicago, IL, A. JEF-FREY WEISS, ESQ., A.J. Weiss & Associates, St. Thomas, USVI, *Attorneys for Appellants.*

PAUL M. O'CONNOR, III, ESQ., Kasowitz, Benson, Torres & Friedman, LLP, New York, NY, MICHAEL J. SANFORD, ESQ., Sanford, Amerling & Associates, St. Croix, USVI, *Attorneys for Appellee Hoechst Celanese Corporation.*

KATHLEEN TAYLOR SOOY, ESQ., Cromwell & Moring, LLP, Washington, D.C., DOUGLAS L. CAPDEVILLE, ESQ., Law Offices of Douglas L. Capdeville, P.C., St. Croix, USVI, *Attorneys for Appellee E.I. du Pont de Nemours and Company.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(January 22, 2014)

CABRET, *Associate Justice.* St. Croix, Ltd., St. Thomas I, Ltd., St. Thomas II, Ltd., and Llewellyn Phillips appeal the Superior Court's dismissal of their claims against Hoechst Celanese Corporation and E.I. DuPont de Nemours and Company for lack of personal jurisdiction. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the late 1970s, Shell Oil Company began manufacturing the plastic resin polybutylene, which it sold in bulk form to companies around the United States. Celanese and DuPont manufactured another plastic resin that Celanese distributed under the name "Celcon" and DuPont

distributed under the name "Delrin." Companies such as U.S. Brass, Vanguard, and Delta Faucet purchased the polybutylene from Shell, using it to create tubes and pipes. They also purchased Celcon and Delrin, using this acetal resin in pipe joints and fittings. The polybutylene pipes and plastic fittings were marketed and distributed as an alternative to traditional metal plumbing systems.

Over the next two decades, contractors, developers, and homebuilders purchased the new plumbing system and installed it in homes, apartment buildings, and condominiums around the country. But by the early 1980s, problems with the polybutylene plumbing system began to surface. Shell, DuPont, and Celanese received complaints that the polybutylene pipe system would unexpectedly fail, causing significant water damage to homes and businesses, resulting in class-action litigation throughout the United States. *See, e.g., Richard v. Hoechst Celanese Chem. Group, Inc.,* 355 F.3d 345, 348 (5th Cir. 2003).

In 1997, St. Croix, Ltd., owner and operator of the Carib Villa Apartments on St. Croix, St. Thomas I, Ltd., owner and operator of the Clearview Apartments on St. Thomas, and St. Thomas II, Ltd., owner and operator of the Sunrise Cove Apartments on St. Thomas, as well as Llewellyn Phillips, an individual apartment unit owner on St. Thomas ("Appellants"), sued Shell, Celanese, and DuPont in the Superior Court[1] seeking to recover compensatory, consequential, and punitive damages allegedly caused by the faulty polybutylene plumbing in their complexes. They claimed that Shell, Celanese, and DuPont had engaged in deceptive and fraudulent practices and had conspired together in marketing and selling the defective polybutylene plumbing systems throughout the nation. Appellants also alleged that Shell, Celanese, and DuPont knew or should have known that polybutylene plumbing systems were sold and installed in the Virgin Islands, along with other United States territories, but that they "either failed to disclose this fact or actively concealed this information from the courts . . . . As a result, no funds for repair and/or replacement of polybutylene plumbing systems are available."

---

[1] Before October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. SESS. LAWS 179 (Act No. 6687, § 1(b)) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of courts of local jurisdiction in the Virgin Islands, effective October 29, 2004). Nevertheless, this Opinion refers to the former Territorial Court by its current name to avoid confusion.

Accordingly, Appellants sought to certify a class of all persons in the Virgin Islands, Guam, Puerto Rico, the former Trust Territory of the Pacific, and the former Panama Canal Zone who had incurred damages from polybutylene plumbing systems.

On September 10, 1997, DuPont filed a motion to dismiss for lack of personal jurisdiction, arguing that it did not have the required minimum contacts with the Territory for the Superior Court to exercise jurisdiction under the Virgin Islands long-arm statute. On November 4, 1997, Celanese moved to dismiss on the same ground. Appellants opposed both motions and requested leave to conduct jurisdictional discovery. In two May 10, 1999 Orders, the Superior Court found that Appellants had "failed to put forth facts" showing how their claims arose out of any alleged contacts Celanese or DuPont had with the Virgin Islands, but took the motions to dismiss under advisement and granted Appellants three months to conduct jurisdictional discovery.

Appellants then served Celanese and DuPont with requests for production and interrogatories. Dissatisfied with their responses, Appellants filed motions to compel, which the Superior Court granted. Still dissatisfied with Celanese's discovery responses, Appellants moved the court to order Celanese to show cause why it should not be held in contempt, but this motion was denied. Appellants then moved for a sixty-day extension for jurisdictional discovery, but the court denied this as well. The court heard oral arguments on Celanese and DuPont's motions to dismiss on July 24, 2000, and granted the motions on March 15, 2002, dismissing both Celanese and DuPont for lack of personal jurisdiction. The litigation continued against Shell, resulting in a settlement and the voluntary dismissal of all claims against Shell on June 20, 2011. Appellants filed a timely notice of appeal on July 18, 2011, challenging Celanese and DuPont's dismissal from the case.

## II. JURISDICTION

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's June 20, 2011 Order was a final order "dispos[ing] of all of the claims submitted to the Superior Court for adjudication." *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012). Therefore, we have jurisdiction to review the Superior Court's June 20, 2011 Order and all prior

interlocutory orders, which "merge with the final judgment . . . [and] may be reviewed on appeal from the final order." *In re Estate of George*, 59 V.I. 913, 919 (V.I. 2013).

## III. DISCUSSION

Appellants argue that the Superior Court had personal jurisdiction over Celanese and DuPont under 5 V.I.C. § 4903 — the Virgin Islands long-arm statute — because Appellants established a prima facie case for jurisdiction by producing evidence that Celanese and DuPont engaged in activities directed at, and causing injury in, the Territory. Appellants also argue that Celanese failed to comply with its discovery obligations, preventing them from obtaining evidence supporting personal jurisdiction. We address each argument in turn.

### A. Personal Jurisdiction

Appellants argue that the Superior Court erred in dismissing Celanese and DuPont because the evidence established personal jurisdiction by showing that Celanese and DuPont transacted business in — and derived substantial revenue from — the Territory. In finding that it did not have personal jurisdiction over Celanese and DuPont, the Superior Court held that Appellants failed to establish that Celanese and DuPont transacted business in the Territory or entered into a contract to do business in the Territory. We review the Superior Court's holding that it lacked personal jurisdiction *de novo*, and construe all disputed facts in favor of finding personal jurisdiction. *Molloy v. Independence Blue Cross*, 56 V.I. 155, 169 (V.I. 2012).

"Personal jurisdiction is the authority of a court to exercise jurisdiction over a party before it. A defendant may challenge a court's exercise of personal jurisdiction in a pre-answer motion under Federal Rule of Civil Procedure 12(b)(2)." *Id.* at 172. Once a defendant challenges the court's jurisdiction, the burden then shifts to the plaintiff to show that jurisdiction over the defendant is proper. *Id.* Here, Celanese and DuPont challenged the Superior Court's exercise of personal jurisdiction by pre-answer motion, and therefore it was Appellants' burden to show that the court had personal jurisdiction. Because the Superior Court allowed jurisdictional discovery but did not hold an evidentiary hearing, Appellants were only required to establish a prima facie case for

jurisdiction through evidence supporting their factual allegations. *Id.* at 172-73.

■■ The Superior Court may exercise personal jurisdiction over an out-of-state defendant only where the plaintiff has satisfied the requirements of the long-arm statute and the exercise of personal jurisdiction satisfies the requirements of due process. *Id.* at 173. Title 5, section 4903 of the Virgin Islands Code specifies several alternative bases on which the Superior Court can exercise personal jurisdiction over an out-of-state defendant, providing:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> > (1) transacting any business in this territory;
> > (2) contracting to supply services or things in this territory; [or]
> >
> > . . . .
> >
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
> >
> > . . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Appellants argue they established personal jurisdiction under subsections (a)(1) and (4) through evidence that both Celanese and DuPont transacted business in the Territory and derived substantial revenue from the sale of the acetal resins used in polybutylene plumbing systems in the Territory. However, the only evidence Appellants cite in support of these assertions is the affidavit of architect Carl Groesbeck. In the affidavit, Groesbeck stated that he inspected the Sapphire Beach Resort in St. Thomas and "found Vanguard polybutylene plumbing installed," and that Sapphire Beach representatives informed him that its Florida-based contractor recommended Vanguard's polybutylene plumbing system "because, in part, of the promotional and marketing efforts undertaken by Vanguard Nationwide to gain acceptance

474

for polybutylene plumbing materials." Appellants argue this shows that "many . . . [polybutylene] plumbing systems have been sold in the Virgin Islands by supply companies in St. Thomas, St. Croix, Puerto Rico and Florida." But even when construing the affidavit in favor of finding personal jurisdiction, it still does not support such a finding. In order to establish jurisdiction under section 4903(a)(1), Appellants were required to show that Celanese and DuPont "engage[d] in some type of purposeful activity within the territory." *Molloy*, 56 V.I. at 176 (internal quotation marks omitted). Nothing in Groesbeck's affidavit — or any other evidence Appellants submitted — shows that Celanese or DuPont engaged in any activity at all in the Territory, let alone "transact[ed] any business in this territory" as required for personal jurisdiction under 5 V.I.C. § 4903(a)(1).

Similarly, under section 4903(a)(4), Appellants were required to show that Celanese and DuPont had "(1) regularly done business with or solicited business from the Virgin Islands, (2) engaged in any other persistent course of conduct in the territory, or (3) derived substantial revenue from goods or services consumed in the Virgin Islands." *Molloy*, 56 V.I. at 180. Groesbeck's affidavit in no way indicates that Celanese or DuPont had any involvement in the sale or distribution of the plumbing system found at Sapphire Beach Resort. Instead, Groesbeck attributes the plumbing system's arrival in the Territory to an unnamed "Florida-based contractor." Appellants also ask that we "take note of the fact that [their] damage expert estimated that there were between 3,000 and 5,000 [polybutylene] plumbing systems sold to Virgin Island[s] consumers between 1985 and 1994." They again cite to Groesbeck's affidavit, and again, it provides no support for this assertion.

Appellants next cite a marketing guide as evidence that Celanese and DuPont "aimed" their "efforts to market the [polybutylene] systems" at "Florida and the Caribbean markets, including the Virgin Islands." But the marketing guide makes no mention of the Virgin Islands, and Appellants fail to explain how this document shows that Celanese or DuPont engaged in any activities in the Territory. Further, Appellants' general assertions that Celanese, DuPont, and other companies engaged in a nationwide marketing campaign to create a market for polybutylene piping does not change the fact that Appellants failed to submit any evidence that either Celanese or DuPont engaged in business activities in the Territory as required by section 4903.

■ ■ Finally, Appellants argue in the alternative that the Superior Court can exercise personal jurisdiction over Celanese and DuPont as Shell's purported co-conspirators. Applying a co-conspirator theory of personal jurisdiction, some courts have held that a plaintiff can establish personal jurisdiction over an out-of-state defendant where the defendant was a member of a conspiracy in which a co-conspirator engaged in a substantial act or caused a substantial effect in furtherance of the conspiracy in the forum jurisdiction, the defendant knew or had reason to know about it, and the act or effect was a direct and foreseeable result of the conspiracy. *See Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 892 A.2d 479, 486 (2006); *Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476 (Del. 1992). This Court has never determined whether co-conspirator personal jurisdiction applies in the Virgin Islands,[2] but even if Appellants could proceed under this theory of personal jurisdiction — a question we do not reach — we would still affirm. "The general rule that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts applies to conspiracy-based jurisdiction." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524, 348 U.S. App. D.C. 238 (D.C. Cir. 2001) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378, 267 U.S. App. D.C. 27 (D.C. Cir. 1988)) (internal quotation marks and alterations omitted). Even assuming the evidence showed that Celanese and DuPont were engaged in a conspiracy with Shell, there was no evidence that Celanese or DuPont knew or should have known that Shell's activities would cause injury in the Virgin Islands. *See Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982) (a plaintiff cannot establish conspiracy jurisdiction without "mak[ing] a factual showing that . . . the defendant knew or had reason to know of the act in the forum state"); *Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn. 2001) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is

---

[2] We note that the United States Supreme Court has never determined whether co-conspirator personal jurisdiction comports with the requirements of due process, and state courts have split on this question. *See, e.g., Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 892 A.2d 479, 487 (2006) ("We conclude that the conspiracy theory of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment."); *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 427 N.E.2d 1203, 1208 (1981) ("The idea of jurisdiction based on the acts of co-conspirators has been questioned.").

not enough." (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992))).

██ ██ Consequently, Appellants failed to establish a prima facie case in support of the Superior Court's assertion of personal jurisdiction over Celanese or DuPont, as there is no evidence supporting Appellants' allegations that Celanese or DuPont engaged in activities in, or directed at, the Territory. Accordingly, the Superior Court did not err in granting Celanese and DuPont's motions to dismiss for lack of personal jurisdiction.[3]

## B. Discovery Rulings

 During jurisdictional discovery, Appellants moved to compel Celanese and DuPont to comply with Appellants' discovery requests. The court granted these motions and permitted Appellants to conduct jurisdictional discovery, taking Celanese and DuPont's motions to dismiss under advisement for three months. Then Appellants moved the court to hold Celanese in contempt for failing to comply with the discovery orders, but the court denied this motion in a November 10, 1999 Order. Finally, Appellants moved for additional time to conduct discovery, but the court denied this motion as well in a January 24, 2000 Order. Appellants argue that in denying these motions, the Superior Court allowed Celanese to skirt its discovery obligations, depriving Appellants of the evidence needed to prove that the court had personal jurisdiction over Celanese. However, not only did Appellants fail to designate these

---

[3] Because personal jurisdiction fails under the long-arm statute, we do not reach Appellants' arguments that personal jurisdiction comports with due process. *See Molloy*, 56 V.I. at 182 n.7 (where appellant failed to establish personal jurisdiction under the long-arm statute, "we are not required to review whether [appellant] provided the necessary showing [for the Superior Court] to exercise jurisdiction under the Due Process Clause of the Fourteenth Amendment"). Additionally, Appellants argue that the Superior Court erred in failing to consider the evidence they submitted after discovery, and instead only reviewed the allegations of their complaint. But, after conducting a *de novo* review of the record, we affirm the Superior Court's ultimate holding that it lacked personal jurisdiction, and therefore any error in this regard was harmless. V.I.S.CT.R. 4(i) ("No error or defect in any ruling . . . by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."). Appellants further assert that the Superior Court erred in holding that an injury must be non-economic to satisfy 5 V.I.C. § 4903(a)(4). The Superior Court cited no authority for this holding and section 4903 contains no such restriction. But again, because we affirm after a *de novo* review of the record, this error was harmless.

orders in their notice of appeal as required by the Supreme Court Rules, *see* V.I.S.CT.R. 4(c) ("[t]he notice of appeal shall . . . designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal"), they also failed to cite any legal authority supporting their arguments, thereby waiving this issue. V.I.S.CT.R. 22(m) ("Issues . . . unsupported by argument and citation to legal authority[ ] are deemed waived for purposes of appeal."); *see also Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 239 (V.I. 2013) (declining to address an argument where the appellant "completely fail[ed] to cite any legal authority to support her contention that the Superior Court erred").[4] Therefore, because Appellants have failed to comply with this Court's rules, we decline to address these arguments.

## IV. CONCLUSION

Because Appellants failed to make a prima face showing of personal jurisdiction through evidence of contacts with the Virgin Islands by Celanese and DuPont, the Superior Court did not err in dismissing them from the case. Although Appellants argue that the Superior Court's discovery orders prevented them from obtaining the evidence necessary to establish personal jurisdiction, they failed to designate these orders in their notice of appeal and waived these arguments by failing to cite any legal authority in their appellate brief. Accordingly, we affirm the Superior Court's March 15, 2002 Order granting the motions to dismiss by Celanese and DuPont and the Superior Court's final June 20, 2011 Order.

---

[4] Appellants additionally contend that the Superior Court erred in failing to permit them to amend the complaint after granting the motions to dismiss. Without addressing whether the Superior Court even had the power to grant such an amendment after dismissing the parties from the action, the amendment would have been futile. The proposed amendments simply added allegations that were contained in Appellants' responses to the motion to dismiss. Amending the complaint would not change the fact that Appellants failed to produce evidence supporting any of their jurisdictional allegations. *Harvey v. Christopher*, 55 V.I. 565, 577 n.8 (V.I. 2011) (the Superior Court is "not required to allow an amendment when [the] amendment would have been futile") (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).