SECOND AMENDMENT
FOUNDATION, et al.,
Appellants,

v.

UNITED STATES CONFERENCE OF
MAYORS, et al., Appellees.

No. 00–7188.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 28, 2001.

Decided Dec. 21, 2001.

Richard E. Gardiner argued the cause and filed the briefs for appellants.

Joseph M. Sellers argued the cause for appellees. With him on the brief was Richard S. Lewis. Jack D. Maistros, Keith Vernon, Laurie A. Holmes, James B. Meyer, William A. Walker and Peter M. Kelley entered appearances.

Before: EDWARDS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this action, firearm consumers and others, alleging deprivation of their First, Second, and Ninth Amendment rights, bring civil conspiracy claims against the mayors of twenty-two cities that filed damage actions against gun manufacturers and dealers. The question presented in this appeal is whether the mayors, none of whom resides in the District of Columbia, subjected themselves to suit here by discussing their litigation at a meeting held in the District. Because we agree with the district court that attending the meeting was insufficient to trigger the District of Columbia long-arm statute, we affirm its dismissal of the complaint.

## I.

Beginning in 1998, cities across the country, including Boston, Chicago, New Orleans, and San Francisco, filed suits charging firearm manufacturers and dealers with creating and maintaining a public nuisance. According to the cities, the manufacturers and dealers "knowingly and recklessly market, distribute, promote, design and/or sell firearms in ways that facilitate the criminal use of firearms; circumvent federal, state and local laws; deceive the public about the dangers of firearm possession; fail to incorporate reasonable firearm safety features and warnings; and inadequately disclose the risks associated with firearms." Appellees' Br. at 3.

Appellants, the Second Amendment Foundation, Inc., the Shooters Committee on Political Education, Inc., and several firearm consumers and licensees who are members of one or both of these organizations—throughout this opinion, we shall refer to appellants as "SAF"—filed suit under 42 U.S.C. § 1983 in the United States District Court for the District of Columbia against the mayors of the cities that had sued gun manufacturers. SAF alleges that the mayors "conspired together" to bring these suits "for the purpose of bankrupting and otherwise harming" the manufacturers and dealers "as a result of the litigation costs of defending such civil actions." Amended Compl. ¶ 10. SAF further alleges that the lawsuits caused the manufacturers and dealers to raise prices or curtail sales of firearms, thereby violating SAF's First, Second, and Ninth Amendment rights, as well as its "right to engage in, and obtain the benefits of, interstate commerce." Amended Compl. ¶¶ 15, 17, 19.

The mayors, pointing out that none of them lives in the District of Columbia, moved to dismiss for lack of personal jurisdiction. In response, SAF asserted that the district court had jurisdiction under the District of Columbia long-arm statute, which accords jurisdiction over persons who "transact[ ] business" in the District "directly or by an agent[.]" D.C.Code Ann. § 13–423(a)(1) (West 2001). As evidence that the mayors transacted business here, SAF pointed to the United States Conference of Mayors' web site, which re-

ports that at the Conference's 67th Winter Meeting, held in the District of Columbia, the mayors discussed their litigation against gun manufacturers. According to the web site, "[i]n a session closed to the public, Philadelphia Mayor Edward Rendell led mayors in a discussion of gun-related legislative and litigation strategies." USCM 67th Winter Meeting, Mayors Exchange Information on Guns Issues, http://www.usmayors.org/USCM/meeting/jan27.htm (last visited Nov. 16, 2001). Mayor Rendell chairs the Conference's Gun Violence Task Force. 1999 Winter Meeting, Mayors Keep Focus on Gun Safety and Industry Responsibility, http://www.usmayors.org/USCM/us_mayor_newspaper/documents/02_08_99/winter-meeting/8gun.htm (last visited Nov. 16, 2001). In another session, the mayors "focused on lawsuits previously brought against the gun industry by the cities of New Orleans and Chicago, and two new suits filed by Miami–Dade County and Bridgeport." *Id.* The web site identifies four of the twenty-two mayors sued in this case as having participated in this session. *Id.*

Concluding that SAF's allegations fell "far short" of "the prima facie showing necessary to carry the burden of establishing personal jurisdiction," the district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). 3/13/00 Mot. Hr'g Tr. at 21. SAF now appeals. Because the underlying facts are undisputed, this appeal presents only legal issues, so our review is de novo. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 150–51 (2d Cir. 2001) (stating rule for review of Rule 12(b)(2) dismissal).

## II.

In addition to defending the district court's dismissal for lack of personal jurisdiction, the mayors argue that SAF lacks Article III standing to maintain this action. Applying the principle that "there is no unyielding jurisdictional hierarchy," *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 578, 119 S.Ct. 1563, 1567, 143 L.Ed.2d 760 (1999), we begin and end with personal jurisdiction.

Under the District's long-arm statute, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia[.]" D.C.Code Ann. § 13–423(a)(1) (West 2001). SAF relies on the "conspiracy theory" of personal jurisdiction, an application of long-arm jurisdiction pursuant to which a defendant's contacts with the forum consist of the defendant's conspiratorial activities. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1030–31 (D.C.Cir.1997) (applying conspiracy theory of personal jurisdiction to long-arm statute's "transacting business" provision); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424–25 (D.C.Cir.1991) (discussing application of conspiracy theory of personal jurisdiction to long-arm statute's "causing tortious injury in the District" provision). Persons who enter the forum and engage in conspiratorial acts are deemed to "transact business" there "directly"; co-conspirators who never enter the forum are deemed to "transact business" there "by an agent." D.C.Code Ann. § 13–423(a)(1) (West 2001); *see Jungquist,* 115 F.3d at 1030–31 (discussing theory that defendants satisfied either "transacting business" or "contracting to supply services" provision by conspiring to defraud plaintiff and breach contract, and by performing overt acts in furtherance of conspiracy, in the District, and discussing extension of jurisdiction to coconspirators who did not enter the District); *First Chicago Int'l v. United Exch. Co.,* 836 F.2d

1375, 1377–78 (D.C.Cir.1988) (discussing theory that defendants satisfied "transacting business" provision by directing checks and wire transfers into and out of the District in furtherance of a check-kiting conspiracy, and discussing extension of jurisdiction to coconspirator who did not enter the District).

■■■■ "[T]he general rule ... that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts[ ]" applies to conspiracy-based jurisdiction. *Id.* at 1378. To prevail on its jurisdictional theory, therefore, SAF must make a prima facie showing of civil conspiracy. In the District of Columbia, civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983). Since the "bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction[,]" "a plaintiff must allege specific acts connecting [the] defendant with the forum[.]" *First Chicago*, 836 F.2d at 1378 (internal quotation marks and citations omitted).

■■■ According to SAF, the four mayors who attended the 67th Winter Meeting and the eighteen absent mayors whose cities also filed suit transacted business in the District within the meaning of the long-arm statute because they "conspired together" to "bankrupt[ ] and otherwise harm[ ]" gun manufacturers and dealers. Even assuming that suing manufacturers in order to bankrupt them would be unlawful, SAF has alleged no "specific acts" showing that the mayors agreed to file suit, let alone with such a purpose. The allegation that the mayors "conspired together" represents nothing more than a

legal conclusion, which we have held "does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–88 (D.C.Cir.1983) (holding that plaintiff's characterization of defendants as "alleged coconspirators" was insufficient "conclusionary statement"). The web site report that Mayor Rendell "led mayors in a discussion of legislative and litigation strategies" adds nothing. That the mayors discussed these strategies fails to show, as SAF must, that the mayors agreed to file lawsuits with an unlawful objective. Were we to conclude otherwise, people would be unable to meet in the nation's capital to discuss issues of concern without subjecting themselves to the jurisdiction of D.C. courts.

SAF also argues that the fact that multiple cities filed suit shows that the mayors entered into a conspiratorial agreement at the 67th Winter Meeting. Although SAF offered this argument in the district court and here at oral argument, it failed to do so in its opening brief, so we need not consider it. *See, e.g., Tourus Records, Inc. v. DEA*, 259 F.3d 731, 739 n. 13 (D.C.Cir. 2001). In any event, the argument is unpersuasive. To begin with, some cities filed suit before the 67th Winter Meeting occurred. Moreover, the fact that the cities filed suit does not support an inference either that the mayors agreed to do so or, more to the point, that they reached any such agreement at a particular time and place and for the purpose of bankrupting gun manufacturers.

For all these reasons, we agree with the district court that SAF has failed to make a prima facie showing of the first two elements of civil conspiracy: "(1) an agreement ... (2) to participate in an unlawful act, or a lawful act in an unlawful manner." *Halberstam*, 705 F.2d at 477. We thus

need not consider the mayors' argument that SAF failed to meet its burden as to the remaining elements of conspiracy, *see id.*, nor their claim that exercising personal jurisdiction over them would violate principles of due process, *see First Chicago*, 836 F.2d at 1377 (observing that long-arm statute's "transacting business" provision "has been interpreted to be coextensive with the Constitution's due process limit").

### III.

 SAF next argues that even if it failed to establish a prima facie case, the district court erred in dismissing its suit before SAF had an opportunity to take jurisdictional discovery. Certainly, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery[.]" *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996). To get discovery, however, one must ask for it. SAF's only mention of jurisdictional discovery occurred during the hearing on the mayors' motion to dismiss. Asked by the district court if SAF had evidentiary support for its allegation of a conspiratorial agreement, counsel responded: "[A]fter discovery ... we fully expect that there will be evidence developed that there was an agreement between the parties.... I believe we will get that information in discovery." 3/13/00 Mot. Hr'g Tr. at 9, 13. But SAF neither moved for an opportunity to serve jurisdictional discovery nor defended against the mayors' motion to dismiss on the ground that it had not yet taken such discovery. Not surprisingly, the district court never entered a discovery order. Under these circumstances, we will not consider SAF's argument that the district court somehow erroneously denied jurisdictional discovery. *See, e.g., Tomasello v. Rubin*, 167 F.3d 612, 618 (D.C.Cir.1999) ("Absent exceptional circumstances, the court of appeals is not a forum in which a litigant can present legal theories that it neglected to raise in a timely manner in proceedings below." (internal quotation marks and citation omitted)).

The decision of the district court is affirmed.

*So ordered.*