**ULICO CASUALTY COMPANY,**
**Plaintiff,**

v.

**FLEET NATIONAL BANK, Defendant.**

**Civil Action No. 02–1009 RMU.**

United States District Court,
District of Columbia.

March 31, 2003.

Alex Blanton, Esquire, Dyer, Ellis & Joseph, Washington, DC, for the plaintiff.

David H. Dickieson, Esquire, Buchanan Ingersoll, Washington, DC, for the defendant.

*MEMORANDUM OPINION*

URBINA, District Judge.

### DENYING THE DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Ulico Casualty Company ("Ulico" or "the plaintiff"), a subsidiary of ULLICO, Inc., filed this action against Fleet National Bank ("Fleet" or "the defendant") alleging that Fleet wrongfully deducted funds from Ulico's checking account to pay six counterfeit checks. This matter is before the court on Fleet's motion to dismiss Ulico's complaint for lack of personal jurisdiction. Evaluating Fleet's contacts in the District of Columbia, the court determines that it has specific personal jurisdiction over the defendant and therefore denies the defendant's motion to dismiss.

## II. BACKGROUND

Both ULLICO and its subsidiaries (Ulico is one of these subsidiaries), are located in the District of Columbia. Compl. at 2–3. Fleet, a Rhode Island corporation with its principal office in Connecticut, maintains no offices, branches, or employees in the District of Columbia. *Id.* at 2; Swagerty Decl. ¶¶ 1, 3.

Fleet and ULLICO negotiated a series of contracts for Fleet to provide banking services to ULLICO and its subsidiaries. Fritter Decl. ¶¶ 3–4; Pl.'s Opp'n at 8. Pursuant to these contracts, Fleet manages checking accounts for ULLICO and its subsidiaries, which include the plaintiff. Compl. at 2. ULLICO and its subsidiaries perform all banking transactions with Fleet from their District of Columbia offices using Fleet's software. Fritter Decl. ¶ 4; Pl.'s Opp'n at 2, 8. Fleet sent technicians to these District of Columbia offices to install the software and train the soft-

ware users. Fritter Decl. ¶ 4; Pl.'s Opp'n at 3, 8. On numerous occasions, Fleet sent at least seven senior representatives to these District of Columbia offices to strengthen customer relations. Fritter Decl. ¶ 5; Pl.'s Opp'n at 2. Fleet has also carried on systematic communications with these offices by mail, courier, telephone, and electronic mail. *Id.* ¶ 6; Pl.'s Opp'n at 2, 9.

Ulico filed a complaint on May 22, 2002, alleging that Fleet, wrongfully and in violation of established procedures, deducted $342,135.06 from Ulico's checking account to pay six counterfeit checks drawn against the plaintiff's account. Compl. at 1. The plaintiff explains that the counterfeit checks were not genuine Ulico checks, the Ulico signatures were forged, and each check was endorsed by only one of the joint payees. Compl. at 4. Based on these transactions, the plaintiff claims breach of contract, breach of statutory duty, conversion, negligence, and unfair trade practices against the defendant. *Id.* at 6–10. On July 12, 2002, Fleet filed a motion to dismiss Ulico's claims based on lack of personal jurisdiction.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Dismiss for Lack of Personal Jurisdiction

■ On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990).

The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir.2001). Bare allegations and conclusory statements are insufficient. *Id.* In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies appearing in the record in favor of the plaintiff. *Crane,* 894 F.2d at 456. The court need not treat all of the plaintiff's allegations as true, however. *United States v. Philip Morris, Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*

■ The court may exercise personal jurisdiction over a non-resident defendant by finding either general or specific jurisdiction.[1] *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir.2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). For specific personal jurisdiction, the court must examine whether jurisdiction is applicable pursuant to one of the several bases provided by the District of Columbia's long-arm statute.[2] D.C.Code § 13–423; *GTE New Media Servs. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C.Cir.2000). The court must also determine whether a finding of jurisdiction satisfies the constitutional requirements of due process. *Id.*

■ The District of Columbia long-arm statute provides, *inter alia,* that the court may exercise specific personal jurisdiction

---

1. Because the court determines that it has specific jurisdiction over the defendant, it does not address general personal jurisdiction.

2. Where subject-matter jurisdiction is founded on diversity, as it is here, the court must apply the jurisdictional law of the state in which it resides. *Tavoulareas v. Comnas,* 720 F.2d 192, 193 (D.C.Cir.1983). Accordingly, this court applies District of Columbia law.

over a non-resident defendant for claims arising from the defendant transacting any business in the District of Columbia. D.C.Code § 13–423(a)(1). For this "transacting business" section of the long-arm statute to apply, the defendant's contacts with this district must relate to the factual circumstances giving rise to the suit. *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974–75 (D.C.Cir.1990). A defendant need not be present in the District of Columbia to transact business here. *Material Supply Int'l, Inc. v. Sunmatch Indus. Supply Int'l, Inc.*, 62 F.Supp.2d 13, 19 (D.D.C.1999). This circuit has interpreted the "transacting any business" clause of § 13–423(a)(1) as requiring the same contacts as due process. *GTE New Media Servs.*, 199 F.3d at 1347.

■ The Due Process Clause requires the plaintiff to demonstrate " 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C.Cir.2002). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v.Super. Ct. of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

**B.  The Court Has Specific Personal Jurisdiction Over the Defendant**

Fleet moves the court to dismiss this case for lack of personal jurisdiction. Def.'s Mot. to Dismiss at 5. In response, Ulico asserts that the court has specific personal jurisdiction over Fleet because Ulico's claims arise from Fleet transacting business in the District of Columbia pursuant to its contract to provide banking services to ULLICO and its subsidiaries. Pl.'s Opp'n at 8–9; Compl. The following cases provide helpful context for the analysis of this dispute.

In *Burger King Corp. v. Rudzewicz*, a Miami corporation filed suit in Florida against a Michigan resident. 471 U.S. 462, 471, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The suit did not offend due process because the defendant had reached out to the Miami corporation to negotiate a contract with a substantial connection to Florida. *Id.* at 479, 105 S.Ct. 2174. The Court explained that the contract created a long-term relationship that envisioned continuing and wide-reaching contacts with the corporation in Florida and required the defendant to send payments to the corporation's headquarters in Miami. *Id.* at 480, 105 S.Ct. 2174. Furthermore, the court reasoned that these contacts with the forum were not "random, fortuitous, or attenuated," and, therefore, bringing the defendant into court in Florida was reasonable. *Id.*

In another illustrative personal jurisdiction case, a Bermuda corporation hired a District of Columbia law firm to help it obtain an operating license from the Bermuda government. *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974 (D.C.Cir.1990). The firm filed suit in the District of Columbia to recover fees owed under the agreement with the Bermuda corporation. *Id.* The court applied the

"transacting business" provision of the District of Columbia long-arm statute and held:

> there is no doubt that Bermuda Cablevision purposefully established significant contacts with the District by retaining the Koteen law firm, visiting its offices in the District of Columbia on several occasions, and extensively communicating with it by telephone and by mail. These contacts are plainly enough for the exercise of jurisdiction to satisfy the requirements of due process.

*Id.* at 975.

The court determines that, similar to the business relationships in *Burger King* and *Koteen*, Fleet entered into banking contracts with ULLICO and its subsidiaries (one of which is Ulico) requiring continuing and wide-reaching contacts with the District of Columbia. Fritter Decl. ¶¶ 3–4; Pl.'s Opp'n at 8; *Burger King Corp.*, 471 U.S. at 480, 105 S.Ct. 2174; *Koteen*, 913 F.2d at 975. Pursuant to these contracts, Fleet manages checking accounts for ULLICO and its subsidiaries, located in the District of Columbia. Fritter Decl. ¶¶ 3–4; Compl. at 2. ULLICO and its subsidiaries perform all banking transactions with Fleet from their District of Columbia offices using Fleet's software. Fritter Decl. ¶ 4; Pl.'s Opp'n at 2, 8. Similar to the defendant in *Koteen*, Fleet visited the District of Columbia offices of ULLICO and its subsidiaries (to install software, train the software users, and strengthen customer relations), and communicated with these District of Columbia offices. Fritter Decl. ¶¶ 4–6; Pl.'s Opp'n at 2–3, 8–9; *Koteen*, 913 F.2d at 975. Just as in *Burger King*, Fleet's contacts with the District of Columbia pursuant to its contract with ULLICO were not random, fortuitous, or attenuated. *Burger King Corp.*, 471 U.S. at 480, 105 S.Ct. 2174. Accordingly, Fleet's contacts with

the District of Columbia satisfy the requirements of due process.

Fleet's contacts with ULLICO and its subsidiaries in this district directly relate to the subject of this suit: Fleet's management of the plaintiff's checking account pursuant to its contract with ULLICO. Accordingly, as in *Koteen*, these contacts satisfy the requirements of the "transacting business" clause of the District of Columbia long-arm statute. D.C.Code § 13–423(a)(1); *Koteen*, 913 F.2d at 975; *see also Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd.*, 15 F.Supp.2d 47, 51 (D.D.C.1998) (stating that courts have held that performing business contracts qualifies as transacting business pursuant to § 13–423(a)(1)).

In providing banking services to ULLICO and its subsidiaries in the District of Columbia, Fleet had deliberate and sufficient "minimum contacts" with the District of Columbia such that it should have "reasonably anticipate[d] being haled into court there." *GTE New Media Servs.*, 199 F.3d at 1347. Consequently, the court has specific personal jurisdiction over the defendant.

## IV.  CONCLUSION

For all these reasons, the court denies the defendant's motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of March 2003.

### ORDER

#### DENYING THE DEFENDANT'S MOTION TO DISMISS

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 31st day of March, 2003 it is

**ORDERED** that the defendant's motion to dismiss is **DENIED.**

**SO ORDERED.**