Norman WILLIAMS and Diane Howe, Individually and as legal representatives of J.H., Plaintiffs,

v.

ROMARM and Does Company Distributor, Defendants.

Civil Action No. 12-436(EGS)

United States District Court, District of Columbia.

Signed February 4, 2013

Daniel M. Wemhoff, Law Offices of Daniel Wemhoff, Arlington, VA, for Plaintiffs.

Anthony M. Pisciotti, Pisciotti, Malsch & Buckley, P.C., Anthony Michael Pisciotti, Florham Park, NJ, James Wallace Porter, III, Huddles Jones Sorteberg & Dachille, PC, Columbia, MD, Jeffrey Martin Malsch, Pisciotti, Malsch & Buckley, P.C., White Plains, NY, for Defendants.

### MEMORANDUM OPINION

Emmet G. Sullivan, United States District Judge

This matter is before the Court on defendant ROMARM, S.A.'s Motion to Dismiss, plaintiffs' Motion for Jurisdictional Discovery, and defendant ROMARM's Motion for a Protective Order. For the reasons explained below, defendant's Motion to Dismiss is **GRANTED**, the Motion for Jurisdictional Discovery is **DENIED**, and the Motion for a Protective Order is **DENIED** as moot.

## I. BACKGROUND

Plaintiffs Norman Williams and Diane Howe bring this wrongful death action on behalf of their son, J.H., who was killed in the District of Columbia as a result of gunfire. Compl. ¶ 1-2. The firearm used to kill J.H. was allegedly manufactured by ROMARM, S.A. ("ROMARM" or "defendant"), a Romanian firearm manufacturer. *Id.* ¶ 2. Plaintiffs also bring claims against the alleged distributor of the firearm, "Does Company Distributor," who has not been identified and has not appeared in the case. Plaintiffs allege that personal jurisdiction over ROMARM is appropriate under the District of Columbia's long-arm statute, D.C. Code Section 13–423(a)(3), because "the acts of the defendants caused tortious injury and death ... when one of [ROMARM's] assault weapons" was used to kill J.H. Compl. ¶ 2. Plaintiffs further allege that subject matter jurisdiction exists pursuant to the "commercial activity" exception of the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a)(2), based on the commercial conduct of ROMARM, which is a corporation owned by the government of Romania. Plaintiffs bring claims under the District of Columbia's wrongful death statute, D.C. Code Section 16–2701, the Survival Act, D.C. Code Section 12–101, and the Assault Weapons Manufacturing Strict Liability Act of 1990, D.C. Code Sections 7.2551.01(1)(A) and 7-2551.02. Compl. ¶ 3, Plaintiffs allege that defendants "were grossly negligent by allowing [ROMARM's] assault weapon to be transported to the District where all such weapons are prohibited and denied licensure." Compl. ¶ 4. Plaintiffs further allege that ROMARM and its distributors "could reasonably anticipate that by engaging in the sale and transportation of dangerous weapons overseas that these weapons may land in the hands of criminals who may use the weapons for what they were intended for, that is to kill and maim innocent human beings." Compl. ¶ 7.

On May 14, 2012, ROMARM filed a motion to dismiss plaintiffs' complaint. ECF No. 6. Defendant argued that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(1) for lack of subject matter jurisdiction. Defendant also argued that the complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. With respect to personal jurisdiction, ROMARM argued that this Court lacks both specific and general jurisdiction over ROMARM, a Romanian company with no ties to the District of Columbia, and that the exercise of personal jurisdiction over ROMARM would violate due process. ROMARM further argues that subject matter jurisdiction is absent because ROMARM does not carry on any "commercial activity" in the United States that would subject ROMARM to the relevant exception to the Foreign Sovereign Immunities Act ("FSIA"). With respect to plaintiffs' 12(b)(6) argument, defendant argues that plaintiffs' claims are barred by the applicable statute of limitations.

In response to defendant's motion, plaintiffs filed a motion requesting jurisdictional discovery as to personal and subject matter jurisdiction. ECF No. 10.[1] Plaintiffs argue that they are entitled to discovery regarding "the penetration of the defendant ROMARM, and its armament into the United States market" and "what [ROMARM] knows about the theft of its weap-

---

1. This document is titled "Plaintiffs' Motion for an Extension of Time in Which to Oppose Defendants' Amended Motion to Dismiss Plaintiffs' Complaint." The motion is more accurately described, however, as a motion for jurisdictional discovery because plaintiffs set forth what they believe to be their entitlement to jurisdictional discovery.

ons here." Pl.'s Mot. for Discovery, ECF No. 10, at 2-3.

In response to plaintiffs' motion for discovery, defendant notes that the discovery was served by plaintiffs in contravention of Rule 26(d)(1) because the parties had not conferred as required by Rule 26(f) and the plaintiffs had not obtained a court order permitting such discovery. Defendant also argues that plaintiffs have not alleged sufficient facts in their complaint to warrant jurisdictional discovery because the allegations, even if proven, do not satisfy the requirements for asserting personal jurisdiction over defendant. ECF No. 13 at 1-2. Similarly, defendant argues that plaintiffs have failed to allege any facts regarding subject matter jurisdiction that would justify jurisdictional discovery. Finally, defendant argues that the discovery should be denied as futile because the claims are barred by the applicable statute of limitations. In connection with its opposition, defendant filed a cross-motion for a protective order. ECF No. 12. In that motion, defendant asks the Court to vacate certain premature discovery requests served on defendant by plaintiff. Notably, the discovery requests do not seek any information specific to the District of Columbia.

In a confusing and somewhat disjointed brief, plaintiffs submitted a reply in support of their motion for jurisdictional discovery and in opposition to defendant's motion for a protective order. ECF No. 14. Plaintiffs appear to argue that discovery is warranted as to personal jurisdiction to establish the "proliferation of ROMARM's assault weapons in the U.S. market, and illegally into the District of Columbia." *Id.* at 3. Specifically, plaintiffs appear to seek discovery regarding a distributorship agreement between ROMARM and alleged distributor named Century Arms/International. *Id.* at 3. Plaintiffs also allege that under the FSIA, a plaintiff need only establish that subject matter jurisdiction exists and that personal jurisdiction is assumed. With respect to subject matter jurisdiction, plaintiffs reply that discovery is warranted to establish ROMARM's "awareness that its weapons are destined for the U.S. market and that proper safeguards are lacking there." *Id.* at 6. Plaintiffs also dispute defendant's argument regarding the statute of limitations.

In its reply in further support of its cross-motion for a protective order, defendant argues that plaintiffs misapprehend the applicable law as to personal jurisdiction under the FSIA. In particular, defendant argues that a party must separately establish personal jurisdiction in addition to subject matter jurisdiction under the FSIA. In a surreply, plaintiffs also repeat their prior arguments regarding ROMARM's knowledge of the illegal distribution of its weapons in the United States.[2]

On January 7, 2013, the Court directed plaintiffs to respond to defendant's motion to dismiss and directed defendant to file a reply. The Court also directed the parties to address the recent decision of *GSS Group Ltd. v. National Port Authority,* 680 F.3d 805 (D.C.Cir.2012). In their opposition, plaintiffs dispute defendant's claim of sovereign immunity, contending that defendant's actions qualify as "commercial activity." Plaintiffs also argue that personal jurisdiction is proper because defendant's "nationwide distribution scheme ., . . .

---

**2.** The Court notes that plaintiffs filed two surreplies without seeking leave of Court. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,* 238 F.Supp.2d 270, 276 (D.D.C.2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond."). Nonetheless, the Court has reviewed plaintiffs' surreplies and has found that the arguments contained therein do not materially advance plaintiffs' arguments against dismissal.

[renders it] answerable through the country, wherever its dangerous weapons are found." Pls.' Opp. to Mot. to Dismiss, ECF No. 19, at 1-2. In its reply, defendant argues, *inter alia*, that plaintiffs have failed to establish that the exercise of personal jurisdiction over ROMARM, a state-owned corporation, would not violate due process. Def.'s Reply at 5.

The motion to dismiss is now ripe for the Court's decision.

## II. DISCUSSION

### A. Personal Jurisdiction in FSIA Cases

Under the Foreign Sovereign Immunities Act ["FSIA"], district courts have subject matter jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). The Act defines the term "foreign state" expansively. It includes not only foreign sovereigns, but also any "political subdivision of a foreign state or instrumentality of a foreign state." *Id.* § 1603(a). The term "agency or instrumentality of a foreign state" covers any foreign corporation "a majority of whose shares . . . [are] owned by a foreign state. *Id.* § 1603(b). The parties agree that ROMARM is an "agency or instrumentality of a foreign state" under Section 1603(b). Pls.' Opp. to Def.'s Mot. to Dismiss at 1.

 With respect to personal jurisdiction, the FSIA specifies that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction under" § 1603(a) "where service has been made under" § 1608.[3] In other words, under FSIA, subject-matter jurisdiction plus service of process typically equals personal jurisdiction. *GSS Group*

*Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C.Cir.2012) (citing *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C.Cir.2002)). A significant exception has been recognized, however, where a state-owned corporation is an independent legal entity from its owner. *See id.* at 816–17. In that scenario, a United States court may not exercise personal jurisdiction over a foreign corporation unless the corporation has "minimum contacts" with the relevant forum. *See id.*

The exception has been set forth in a line of cases that is binding precedent on this Court. In *TMR Energy Group v. State Property Fund of Ukraine*, this Circuit recognized that "government instrumentalities established as separate juridical entities distinct and independent from their sovereign should normally be treated as such" for the purposes of a Fifth Amendment analysis. 411 F.3d 296, 301 (D.C.Cir. 2005) (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*"Bancec"*)). In that case, a Ukranian state property fund argued that it was entitled to due process protection and was not subject to personal jurisdiction in the United States. The district court disagreed, and the Circuit affirmed, finding that the State of Ukraine had plenary control over the fund. The Circuit held that a presumption of independent status, detailed by the Supreme Court in *Bancec*, exists between a state-owned entity and the foreign entity that owns it. *Id.* (citing *Foremost–McKesson v. Islamic Republic of Iran*, 905 F.2d 438 (D.C.Cir.1990)). The Court found, however, that the presumption had been overcome. Specifically, the record reflected that the fund was created to implement national policies, its leaders were appointed by the government, and it was accountable to the

3. Defendant does not contest that service was properly made.

government. *Id.* at 301–02. The court noted that the fund was barely distinguishable from an executive department of the government and held that it should not be treated as an independent juridical entity. *Id.* at 302.

In *GSS Group*, the Circuit affirmed a ruling granting a motion to dismiss under the FSIA for lack of personal jurisdiction. 680 F.3d at 809–10. In that case, the district court found that the National Port Authority, an entity owned by the Liberian government, was subject to statutory personal jurisdiction under the FSIA. The court found, however, that plaintiffs had failed to establish Constitutional personal jurisdiction over the entity as required by *TMR Energy* and *Bancec*. *Id.* at 810. The district court held that National Port Authority, though owned by a foreign state, should be afforded the protection of the due process clause. *Id.* Relying on precedent, the court noted that "the extent of a state-owned corporation's juridical independence plays a dispositive role in the constitutional analysis." *Id.* at 815 (citing *TMR Energy Ltd.*, 411 F.3d at 301). "[I]f an instrumentality does not act as an agent of the state, and separate treatment would not result in manifest injustice, the instrumentality will enjoy all the due process protections available to private corporations." *Id.* (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983)). The court cited prior cases that left "the unmistakable impression that United States courts may not exercise personal jurisdiction over a foreign corporation unless the corporation has 'minimum contacts' with the relevant forum." *Id.* at 817. The court found that plaintiff had failed to rebut the presumption of independent status, set forth in *TMR Energy*, between a state-owned entity and its state, because plaintiff had failed to contest defendant's characterization of itself as an independent juridical entity.

Accordingly, the court affirmed the district court's ruling that defendant was entitled to due process protection. *Id.*

■ In this case, unlike in *GSS Group Ltd.*, plaintiffs have not wholly failed to contest defendant's assertion of independent status, but their arguments are not very strong. Plaintiffs argue that a foreign corporation that is state-owned under the FSIA is automatically subject to personal jurisdiction in this Court. *See* Pls.' Opp. to Def.'s Mot. to Dismiss at 8. That is simply not the law in this Circuit. *See GSS Group Ltd.*, 680 F.3d at 817. In *GSS Group Ltd.*, the defendant entity was state-owned and was subject to statutory personal jurisdiction under the FSIA. Nonetheless, because the entity was a foreign corporation, it benefitted from a presumption of independent status. The plaintiff failed to rebut that presumption, and the Circuit affirmed the district court's ruling that minimum contacts with the forum were thus required. 680 F.3d at 817. Accordingly, plaintiffs cannot simply argue as they have that ROMARM has waived the ability to contest personal jurisdiction.

Moreover, the Court finds that ROMARM is entitled to the presumption of independent status because ROMARM has consistently represented that it is a separate entity from the State of Romania, even though it may be state-owned. *See, e.g.*, Reply to Mot. to Dismiss at 6 (ROMARM is a "foreign corporation that is wholly owned by Romania"); Crisan Aff. ¶ 6 (ROMARM is "wholly state-owned and operat[ing] under the authority of Romanian Ministry of Economy, Commerce and the Business Environment"). Under *GSS Group Ltd.* and *TMR Energy*, ROMARM's representations create a presumption of independent status. Plaintiffs' responses, however, do not seriously call into question or rebut the presumption that ROMARM is a separate juridical enti-

ty from the State of Romania. For example, plaintiffs appear to assert that the burden is on ROMARM when they argue that "[w]hether or not [ROMARM] is controlled by the country of Romania is an issue left for defendants to explain to the court." Pls.' Opp. to Def.'s Mot. to Dismiss at 1. Plaintiffs also allege that ROMARM's state ownership "suggests" that ROMARM "may" be acting as an agent or partner of the Romanian government. *Id.* at 4. These statements do not raise any significant questions regarding whether ROMARM is a distinct legal entity, and the Court finds that plaintiffs have failed to rebut the presumption of independent status between ROMARM and Romania. Accordingly, the Court finds that "minimum contacts" must be established between ROMARM and this forum in order to justify the Court's exercise of personal jurisdiction over ROMARM. *See GSS Group Ltd.*, 680 F.3d at 817.

### B. Personal Jurisdiction / Due Process Analysis

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant(s). *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C.Cir.1990). As such, plaintiffs must allege specific acts connecting the defendant(s) with the forum. *See Second Amendment Found v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C.Cir.2001).

Plaintiffs must plead facts sufficient to establish this Court's personal jurisdiction over a defendant in one of two forms: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). To establish general jurisdiction over an out-of-state defendant, a plaintiff must show that the defendant's "contacts with the forum are 'continuous and systematic,' . . . such that due process is not offended by allowing a United States court to hale the defendant into the forum 'over any matter involving the defendant.'" *Allen v. Russian Fed'n*, 522 F.Supp.2d 167, 192–93 (D.D.C.2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe I v. State of Israel*, 400 F.Supp.2d 86, 108 (D.D.C.2005)); *see S.K. Innovation, Inc. v. Finpol*, 854 F.Supp.2d 99, 118 (D.D.C. 2012). Where a court "seeks to assert specific jurisdiction over an out-of state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Mwani v. bin Laden*, 417 F.3d 1, 12 (D.C.Cir.2005) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868). Where a party seeks to assert personal jurisdiction on a "stream of commerce" theory, the party must establish that the defendant "could be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) (plurality opinion). Personal jurisdiction does not exist when the sole basis is that a manufacturer "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." *Id.* at 2785. There are no "mechanical tests" or "talismanic formulas" used by courts to determine whether the assertion of personal jurisdiction is appropriate in a particular case. *Shoppers Food Warehouse v. More-*

*no*, 746 A.2d 320, 329 (D.C.2000). Nevertheless, courts must examine whether "the quality and nature of the nonresident defendant's contacts with the District ... are voluntary and deliberate or only random, fortuitous, tenuous and accidental," whether the defendant "has purposefully availed itself of the benefits and protections of the district in engaging in a business activity in the forum jurisdiction," and whether "it is fair and reasonable to expect it to anticipate being sued in that jurisdiction." *Armenian Genocide Museum and Memorial, Inc. v. Cafesjian Family Foundation, Inc.*, 607 F.Supp.2d 185, 189 (D.D.C.2009) (quoting *Shoppers Food Warehouse*, 746 A.2d at 329).

Nowhere in the complaint or in any of the briefing does plaintiff suggest that the ROMARM has "continuous and systematic" contacts with the District of Columbia that would subject it to the general jurisdiction of this forum. Indeed, plaintiffs only allege that specific jurisdiction is appropriate.

With respect to specific jurisdiction, however, plaintiffs' arguments also fall short. Plaintiffs allege that personal jurisdiction over ROMARM is appropriate under the D.C. long-arm statute because "the acts of the defendants caused tortious injury and death ... when one of [ROMARM's] assault weapons" was used to kill J.H. Compl. ¶ 2.[4] Although not set forth as a jurisdictional allegation, plain-

tiffs further allege that ROMARM and its distributors "could reasonably anticipate that by engaging in the sale and transportation of dangerous weapons overseas that these weapons may land in the hands of criminals who may use the weapons for what they were intended for, that is to kill and maim innocent human beings." Compl. ¶ 7. This is simply insufficient to establish specific jurisdiction over ROMARM. There are no allegations that ROMARM directed any activities toward the District of Columbia. Moreover, the only allegations regarding the District of Columbia involve criminal conduct by others in the transportation of a firearm into the District. Such facts are far from "purposeful availment" and are more akin to the "random, fortuitous, tenuous and accidental" contacts contemplated by the District of Columbia Court of Appeals in *Shoppers Food Warehouse. See* 746 A.2d at 329.

Plaintiffs also argue that personal jurisdiction is appropriate under the District of Columbia Assault Weapons Manufacturing Strict Liability Act. Plaintiffs' arguments as to this point confuse personal jurisdiction with liability. *See* Pls.' Opp. to Mot. to Dismiss at 5 (citing *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 658 (D.C.2005)). The Act states that

Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for

4. Paragraph (a)(3) of the District of Columbia long-arm statute, which is the only provision cited by plaintiff in the complaint, provides that a District of Columbia court may exercise personal jurisdiction over "a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... causing tortious injury in the District of Columbia by an act or omission in the District of Columbia ...." This paragraph is "a precise and intentionally restricted tort section, which stops short of the outer limits of due process, and which confers jurisdiction only over a defendant

who commits an act in the District which causes an injury in the District, without regard to any other contacts." *Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 221 (D.C.Cir.1986) (citations omitted). In view of this Circuit's holding in *GSS Group Ltd.* that the FSIA requires a foreign corporation's contacts with the forum state to satisfy due process, however, the Court will analyze ROMARM's contacts to determine whether they meet the broader due process standard, rather than the long-arm standard. *See* 680 F.3d at 811.

all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately results from the discharge of the assault weapon or machine gun in the District of Columbia.

D.C. Code § 7–2551.02. Though the Strict Liability Act casts its net broadly, it does not concern the exercise of personal jurisdiction over a nonresident entity. Moreover, it does not purport to obviate the "minimum contacts" required to establish personal jurisdiction over a defendant, nor could it do so.

Accordingly, the Court finds that plaintiffs have failed to allege personal jurisdiction over ROMARM.

## C. Request for Discovery as to Personal Jurisdiction Is Denied

Plaintiffs allege that they are entitled to jurisdictional discovery on the issues of personal jurisdiction and subject matter jurisdiction.[5] This Circuit has held that a plaintiff "faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010).

Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction. *See Caribbean Broad. Sys. Ltd. v. Cable & Wireless, PLC*, 148 F.3d 1080, 1089–90 (D.C.Cir.1998) (affirming district court's denial of discovery when plaintiffs did not present sufficient evidence of jurisdiction); *Savage v. Bioport, Inc.*, 460 F.Supp.2d 55, 62–63 (D.D.C. 2006) (denying jurisdictional discovery

where plaintiff did not allege contacts sufficient to establish general or specific jurisdiction). In cases that have allowed discovery, the plaintiff alleged more than "conclusory" jurisdictional facts. *See El–Fadl*, 75 F.3d at 675 (allowing discovery where plaintiff alleged "specific transactions"). As the D.C. Circuit has made clear, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad Sys.*, 148 F.3d at 1090 (citing cases). Furthermore, when requesting jurisdictional discovery, "a plaintiff must make a 'detailed showing' of what discovery it wishes to conduct or what results it thinks such discovery would produce.' " *Atlantigas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34, 53 (D.D.C.2003) (quoting *United States v. Philip Morris Inc.*, 116 F.Supp.2d 116, 130 (D.D.C.2000)).

Plaintiffs' requests for discovery fail to meet these standards because plaintiffs have failed to establish a good faith belief that discovery will enable plaintiffs to show that ROMARM has minimum contacts with this forum. For example, plaintiffs argue that they are entitled to discovery regarding "the penetration of the defendant ROMARM, and its armament into the United States market" and "what [ROMARM] knows about the theft of its weapons here." Pl.'s Mot. for Discovery, ECF No. 10, at 2–3. This statement does not make a "detailed showing" of what discovery plaintiffs wish to conduct and what they think the discovery would produce. Moreover, such an allegation does not relate to any legitimate and purposeful contacts with the District of Columbia. In their opposition to defendant's motion for a protective order, plaintiffs further assert that discovery would estab-

5. As discussed below, the Court does not reach the issue of subject-matter jurisdiction.

lish the "proliferation of ROMARM's assault weapons in the U.S. market, and illegally into the District of Columbia." Pls.' Opp. to Def.'s Mot. for a Protective Order, ECF No. 14, at 2. They argue that discovery would also establish ROMARM's "awareness that its weapons are destined for the U.S. market and that proper safeguards are lacking there." *Id.* at 6. Even if proven, however, ROMARM's "awareness" of an alleged lack of legal safeguards in the United States regarding the sale of firearms, standing alone, would not result in the proper exercise of personal jurisdiction over ROMARM in the District of Columbia. *See, e.g., J. McIntyre Machinery, Ltd.,* 564 U.S. 873, 131 S.Ct. at 2788 (2011). Notably, in their request for discovery, plaintiffs have not set forth a single request regarding ROMARM's connections to the District of Columbia. Rather, plaintiffs seek general and far-reaching discovery regarding ROMARM's business activities as a whole. The Court finds, therefore, that plaintiffs have not established a "good faith belief that [the requested discovery] will enable [them] to show that the Court has personal jurisdiction" over ROMARM. *See Caribbean Broad Sys.,* 148 F.3d at 1090.

### D. The Court Need Not Reach the Issue of Subject Matter Jurisdiction

■ Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) Although defendant also argues that the Court lacks subject-matter jurisdiction over this action, the Court has first considered defendant's argument regarding personal jurisdiction, following the principle that "there is no

unyielding jurisdictional hierarchy." *Second Amendment Foundation,* 274 F.3d 521, 523 (D.C.Cir.2001) (quoting *Ruhrgas,* 526 U.S. at 578, 119 S.Ct. 1563). The Court's conclusion that it lacks personal jurisdiction over ROMARM moots defendant's argument that the Court also lacks subject-matter jurisdiction, and the Court need not reach the latter issue. *See Roz Trading Ltd. v. Zeromax Group, Inc.,* 517 F.Supp.2d 377, 382 (D.D.C.2007); *Ruhrgas AG,* 526 U.S. at 578, 119 S.Ct. 1563.

■ Nor does the Court reach the issue of jurisdictional discovery as to subject-matter jurisdiction. This Circuit has held that where jurisdictional defenses other than subject matter jurisdiction are raised in FSIA cases, the Court may decide to address those issues first. *In re Papandreou,* 139 F.3d 247, 254 (D.C.Cir. 1998), *superseded by statute on other grounds as recognized in Price,* 294 F.3d 82 (D.C.Cir.2002)). In that case, the Circuit held that

Immunity should reduce the expenses, in time and inconvenience, imposed on foreign sovereigns in U.S. Courts. If one (or more) of the other jurisdictional defenses hold out the promise of being cheaply decisive, and the defendant wants it decided first, it may well be best to grapple with it (or them) first. It would be bizarre if an assertion of immunity worked to increase litigation costs via jurisdictional discovery, to the neglect of swifter routes to dismissal.

*Id.* Accordingly, a "district court authorizing discovery to determine whether immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure." *Id.* at 253. "In order to avoid burdening a sovereign that proves to be immune from suit, ... jurisdictional discovery should be carefully controlled and limited; ... it

should not be authorized at all if the defendant raises either a different jurisdictional or 'other non-merits ground[ ] such as forum non-conveniens [or] personal jurisdiction' the resolution of which would impose a lesser burden on the defendant." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C.Cir.2000) (citing *Foremost–McKesson*, 905 F.2d at 449; *see In re Papandreou*, 139 F.3d at 254–55).

Defendant has urged the Court to consider the issue of personal jurisdiction first, arguing that personal jurisdiction disposes of the entire case. For the reasons explained above, the Court agrees. Because the Court finds that the issue of personal jurisdiction is dispositive, the Court declines to reach the issue of subject-matter jurisdiction. The Court also declines to reach the issue of whether jurisdictional discovery is warranted as to subject-matter jurisdiction.

## III. CONCLUSION

For the reasons explained above, the Court finds that it lacks personal jurisdiction over the defendant.[6] Accordingly, defendant's motion to dismiss is **GRANTED**. Plaintiffs' Motion for Jurisdictional Discovery is **DENIED**. Defendant's Motion for a Protective Order is **DENIED** as moot. An appropriate order will accompany this Memorandum Opinion.

---

**6.** Because the Court finds personal jurisdiction to be dispositive, the Court does not reach any other defense, including statute of limitations, raised by defendant.